1 | Aram Ordubegian (SBN 185142)
M. Douglas Flahaut (SBN 245558)
2 | **ARENT FOX LLP**
555 West Fifth Street, 48th Floor
3 | Los Angeles, CA  90013-1065
Telephone:    213.629.7400
4 | Facsimile:    213.629.7401
Email:        aram.ordubegian@arentfox.com
5 |              douglas.flahaut@arentfox.com

6 | General Bankruptcy counsel for
John J. Menchaca, Chapter 7 Trustee
7 |

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **LOS ANGELES DIVISION**

11 |

| In re | Case No. 2:16-bk-21668-BB |
|---|---|
| **HERZL BEN MAROME,** | Chapter Number: 7 |
| Debtor. | **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER:** |
| | **(1) APPROVING THE SALE OF ASSETS UNDER 11 U.S.C. § 363, SUBJECT TO HIGHER AND BETTER OFFERS; AND** |
| | **(2) APPROVING SETTLEMENT AGREEMENT PURSUANT TO FED. R. BANKR. P. 9019;** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JOHN J. MENCHACA IN SUPPORT THEREOF** |
| | Hearing and Sale / Auction Date: |
| | Date:  November 15, 2017 |
| | Time:  10:00 a.m. |
| | Place:  Courtroom 1539 |
| |          255 E. Temple Street |
| |          Los Angeles, CA 90012 |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/14740307.1

**TO THE HONORABLE SHERI BLUEBOND, CHIEF UNITED STATES BANKRUPTCY JUDGE, AND ALL INTERESTED PARTIES:**

By this motion (the "Motion") the trustee of the above captioned Chapter 7 bankruptcy estate (the "Trustee") seeks an order approving the sale of certain assets of the estate as well as approving a compromise between the Trustee and the above-captioned debtor (the "Debtor") under Federal Rule of Bankruptcy Procedure 9019. The terms of the proposed sale and settlement are set forth in full in that certain *Sale and Settlement Agreement* (the "Sale and Settlement Agreement") entered into by and between the Debtor and the Trustee that is attached to the supporting declaration of the Trustee as **Exhibit 1** thereto and incorporated herein by this reference.

More specifically, the Sale and Settlement Agreement contemplates a sale of all assets of the above-captioned estate (the "Estate") whatsoever including, among other things, the Estate's interest in certain real property held by the Debtor and listed in the Debtor's Schedules as well as certain claims against third parties under 11 U.S.C. §§ 544, 548, 550, 551, and/or applicable state law (collectively the "Assets").

Because the Debtor would otherwise be buying potential litigation claims against himself, the Sale and Settlement Agreement also specifically contemplates mutual general releases between the Estate and the Debtor.[1] As set forth more fully in the Sale and Settlement Agreement, the Debtor has agreed to pay $45,000 (the "Purchase Price") to the Trustee in cash in exchange for the Assets. As set forth below, the Purchase Price will be subject to overbid at the sale hearing as set forth in the Trustee's proposed bid procedures and interested parties may submit a higher and better offer for the Assets at the November 15, 2017 hearing.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order (1) approving the Trustee's proposed bid procedures set forth herein; (2) authorizing the sale of the Assets to the Debtor or any successful over-bidder(s); (3) finding that the Debtor or any successful over-bidder(s) are "good faith" purchasers entitled to all of the protections and benefits

---

[1] For purposes of overbidding, the compromise of claims set forth in the Sale and Settlement Agreement should not be an issue as the Trustee views the current offer of $45,000 to be the consideration offered for all of the Assets, including any claims against the Debtor that would be released / compromised under the Sale and Settlement Agreement.

1   of 11 U.S.C. § 363(m); (4) waiving the 14 day stay provided in Rule 6004(h); (5) approving the

2   Sale and Settlement Agreement pursuant to Rule 9019 in the event that Debtor's bid is

3   determined to be the highest and best bid for the Assets; and (6) granting such other and further

4   relief the Court deems just and proper.

5

6   Dated:  October 25, 2017                    By:      /s/ M. Douglas Flahaut

7                                               M. Douglas Flahaut
                                                **ARENT FOX LLP**
8                                               Attorneys for Chapter 7 Trustee

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.**

3

**INTRODUCTORY STATEMENT**

4

By this Motion the Trustee seeks to monetize the assets of the Estate.  Because the assets

5

(especially the potential claims against certain third parties) are highly speculative and of

6

unknown value and because the Debtor and the Debtor's principal litigation creditor, Yona

7

Wipranik, have the most knowledge with respect to the strengths and weaknesses of the claims

8

and the most incentive to purchase and / or compromise the claims, the Trustee believes that

9

holding an auction in open court at which any party, including Ms. Wipranik, may make a bid for

10

the Assets is the best way to efficiently monetize the Assets and ensure the Estate realizes as

11

much as possible for the benefit of creditors.

12

**II.**

13

**FACTUAL BACKGROUND**

14

Prior to the filing of the bankruptcy petition, creditor Yona Wipranik filed at least two

15

actions in Los Angeles Superior Court – one for breach of contract and a second action [Case No.

16

BC611619] for alleged fraudulent transfer(s).  Among other allegations, Ms. Wipranik asserts that

17

the Debtor made certain fraudulent transfers to third parties after the Debtor sold his business in

18

or about 2015.  The Debtor denies that the transfers in question are avoidable under state law or

19

federal bankruptcy law.

20

On August 31, 2016, the Debtor filed his voluntary petition for relief under Chapter 7 of

21

the Bankruptcy Code.  John J. Menchaca was subsequently appointed as the Chapter 7 trustee in

22

the case.  Since the filing of the bankruptcy petition, the state court actions against the Debtor

23

have been stayed pursuant to 11 U.S.C. § 362.

24

On May 5, 2017 the Debtor filed a motion to compel the abandonment of certain property

25

including two pieces of real property (Units B and D) located at 638 Pier Avenue, Santa Monica,

26

California.  The Trustee opposed the motion solely with respect to Unit B.  At the hearing the

27

Court granted the Debtor's motion as to the property requested, but did not order the Estate's

28

interest in Unit B abandoned and, instead, set a continued hearing on the matter.  Since then, the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Trustee and the Debtor have stipulated to continue the hearing multiple time and therefore the Court has not yet ruled on whether Unit B should be abandoned or not.

### III.

### TERMS OF THE SALE AND SETTLEMENT AGREEMENT

As set forth more fully in the Sale and Settlement Agreement attached as **Exhibit 1,** the Trustee has reached an agreement whereby the Debtor will pay $45,000 of exempt or otherwise non-estate funds (subject to overbid) in exchange for the Assets of the Estate as well releases from the Estate.  Because the Estate may have some claims against the Debtor in the State Court Action, all such claims are specifically compromised in the Sale and Settlement Agreement.  However, to the extent that any overbidder is successful, such overbidder will receive all claims and rights of the Estate in the State Court Action, including but not limited to any claims the Estate may have against the Debtor.

### IV.

### JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a), and 363(b), (m), and Bankruptcy Rules 2002, 6004, 9014, and 9019.

### V.

### APPROVAL OF THE PROPOSED SALE

**A.**    **The Proposed Sale Is Supported By Sound Business Judgment And Should Be Approved**

After notice and a hearing, a trustee may sell estate assets outside the ordinary course of its business.  11 U.S.C. § 363(b)(1).  A sale of a debtor's property should be approved if it is in the best interest of the estate and its creditors.  *See, e.g. In re Huntington Ltd.,* 654 F. 2d 578, 589 (9th Cir. 1991); *In re Equity Funding Corp.,* 492 F. 2d 793, 794 (9th Cir. 1974).  As a threshold matter, the disposition of a "claim" by way of a compromise is an asset of the estate and is "the equivalent of a sale of the intangible property represented by the claim, which transaction

1    implicates the 'sale' provisions under 11 U.S.C. § 363 as implemented by Bankruptcy Rule 6004

2    and the compromise procedure of Bankruptcy Rule 9019(a).  *Goodwin v. Mickey Thompson*

3    *Entertainment (In re Mickey Thompson Entertainment)*, 292 B.R. 415, 421 (9th Cir. B.A.P.

4    2003).

5          In evaluating the propriety of a sale of property of the estate, courts have evaluated

6    whether: (i) a "sound business purpose" justifies the sale; (ii) "accurate and reasonable notice" of

7    the sale was provided; (iii) "the price to be paid is adequate, *i.e.*, fair and reasonable"; and (iv)

8    "good faith, *i.e.*, the absence of any lucrative deals with insiders, is present."  *In re Copy Crafters*

9    *Quick Printing, Inc.*, 92 B.R. 973, 983 (Bankr.N.D.N.Y. 1988); *In re Indus. Valley Refrig. and*

10   *Air Cond. Supplies, Inc.*, 77 B.R. 15, 21 (Bankr.E.D.Pa. 1987).  An examination of each of the

11   four relevant factors reveals that the sale here should be approved.  *See e.g. Richmond Leasing*

12   *Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("as long as [the sale] appears to

13   enhance a debtor's estate, court approval of a [Trustee's] decision to [sell] should only be

14   withheld if the [Trustee's] judgment is clearly erroneous, too speculative, or contrary to the

15   provisions of the Bankruptcy Code . . .") (emphasis added).

16         1.    *Sound Business Justification Exists*

17         Section 363(b) of the Bankruptcy Code provides that a trustee, after notice and a hearing,

18   may use, sell or lease property of the estate other than in the ordinary course of business.  *See* 11

19   U.S.C. § 363(b)(1).  In Chapter 7 cases, the trustee has the exclusive right, power and authority to

20   sell assets.  *In re Alpha Indus., Inc.*, 84 B.R. 703, 706 (Bankr.D.Mont. 1988).

21         Although Section 363 does not set forth a standard for determining when it is appropriate

22   for a court to authorize the sale or disposition of a debtor's assets, courts in the Ninth Circuit and

23   others, in applying this section, have required that it be based upon the sound business judgment

24   of the trustee.  *See Simantob v. Claims Prosecutor LLC (In re Lahijani)*, 325 B.R. 282, 288-89

25   (B.A.P. 9th Cir. 2005); *In re Ernst Home Center, Inc.*, 209 B.R. 974, 979 (Bankr.W.D.Wash.

26   1997); *In re Chateaugay Corp.*, 973 F.2d 141 (2nd Cir. 1992).  The trustee is afforded great

27   judicial deference in the exercise of his business judgment.  *Lahijani, supra* at 289; *GBL Holding*

28   *Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D.Tex. 2005).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/14740307.1

1   Here, sound business judgments exist for the sale of the Assets (including the compromise

2   of the Estate's claim against the Debtor).  The Trustee believes that the Purchase Price under Sale

3   and Settlement Agreement, or a higher bid at the sale hearing, will establish a fair value for the

4   Assets.  Indeed, the Auction Notice and proposed bid procedures will provide for the possibility

5   of higher and better bids, and therefore will ensure the best possible return for the Assets.  The

6   Trustee also believes the Debtor's bid to be an adequate purchase price when all of the

7   circumstances are taken into account.[2]  The Debtor is required to provide the Trustee with a

8   cashier's check indicating his ability to complete the purchase of the Assets at the hearing, and

9   the Trustee otherwise believes based on representations of Debtor's counsel that the Debtor is

10  capable of performing.  To that end, the sale will bring much needed cash into the Estate, which is

11  currently administratively insolvent.

12          2.      *The Trustee has Given Accurate and Reasonable Notice of the Sale*

13          The purpose of the notice requirement is to provide an opportunity for objections and a

14  hearing before the court if there are objections.  *See In re Karpe*, 84 B.R. 926, 930

15  (Bankr.M.D.Pa. 1988).  A notice is sufficient if it includes the terms and conditions of the sale

16  and if it states the time for filing objections.  *Id*.

17          The Trustee has complied with all of the applicable provisions of the Bankruptcy Code,

18  the Bankruptcy Rules and the Local Bankruptcy Rules.  Specifically, the Trustee has given notice

19  of this Motion and the proposed Auction, in accordance with Bankruptcy Rules 2002(a)(2),

20  6004(a) and (c), 9007, 9014 and 9019 and Local Bankruptcy Rules 6004-1 and 9013-1, to all

21  known creditors and parties-in-interest in this bankruptcy case by first class mail.  (the "Auction

22  Notice").  In addition, the Trustee is filing, concurrently with this Motion, a *Notice of Sale of*

23  *Assets* (Local Bankruptcy Form F 6004-2) to be posted on the Court's website and has served that

24  notice on all known creditors and parties-in-interest.  The Trustee believes that such notice

25  constitutes adequate notice pursuant to 11 U.S.C. § 102 and requests that such notice be approved

26  by this Court as being adequate under all of the circumstances.

27

28

---

[2] The Trustee is unaware of any significant potential tax consequences that would substantially alter his evaluation of the sale price at this time.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/14740307.1

3.      *The Purchase Price for the Assets is Adequate*

In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold. *In re Chung King, Inc.*, 753 F.2d 547 (7th Cir. 1985); *Alpha Indus., Inc.*, *supra* 84 B.R. at 705.

Here, the Trustee submits that the consideration provided to the Estate by the Debtor for the Assets represents adequate and fair consideration. The Trustee, through his professionals, has reached out to potential buyers, including most-importantly Ms. Wipranik, and has and will continue to provide all available information requested by any interested parties. In this way, the Trustee has and will continue to encourage potential bidders to submit bids. Moreover, the proposed bid procedures outlined below are designed to increase the likelihood that the Estate will receive the highest and best price for the Assets:

**Proposed Bidding Procedures:**

(a)      The Trustee proposes to require that prospective purchasers submit to the Trustee's counsel by 5:00 p.m. prevailing pacific time on the day prior to the sale hearing satisfactory evidence of such purchaser's financial ability to perform, and a $10,000 deposit in good funds, which will be non-refundable if such bidder is the successful over-bidder at the sale hearing and the sale does not close due to the purchaser's default. This provision gives the Trustee time in advance of the sale hearing to evaluate whether a potential bidder is financially capable of promptly closing a proposed transaction. Also, this provision will give potential bidders the comfort that they will not be engaging in a bidding war with parties who are not *bona fide* competitive bidders.

(b)      The Trustee also proposes that any overbid(s) must be in increments of at least $2,500; provided however, that the initial overbid by a third party must be at least $5,000 more than the current $45,000 offer – to wit, $50,000. In order for the Estate to benefit in any material way from an overbid, it is necessary to fix a minimum overbid in excess of the additional costs associated therewith, such as increased legal fees, risk, and other costs.

(c)      As set forth in paragraph four of the Sale and Settlement Agreement the Trustee and the Debtor negotiated a $2,500 break-up fee in favor of the Debtor in the event that

1    the Assets are ultimately sold to a third party overbidder for $50,000 or greater.  This was

2    designed to incentivize the Debtor to be the first mover and to compensate the Debtor for his time

3    in the event the Assets are ultimately sold to third party.  The Trustee believes that this break-up

4    fee is reasonable and should be approved as part of these proposed bidding procedures.

5                    (d)      The Trustee proposes to allow qualified bidders to make further bids at the

6    November 15, 2017 sale hearing.  This will afford parties the opportunity to increase their bids at

7    the sale hearing and thereby gives all qualified bidders a fair and equal opportunity to make a

8    higher and better bid.  Since the Assets will be sold this way in an auction format, the Trustee

9    submits that the final purchase price offered for the Assets at the conclusion of the Auction will

10   establish the fair market value for the Assets.

11            4.      *The Sale is Proposed in Good Faith*

12   Finally, the Trustee submits that the sale proposed in good faith.  The "good faith"

13   requirement focuses principally on the element of special treatment of a debtor's insiders in a sale

14   transaction.  *Indus. Valley, supra,* 77 B.R. at 21.  Here, the Estate has potential claims against the

15   Debtor and other third parties and all the negotiations between the Trustee and the Debtor

16   regarding the Sale and Settlement Agreement and the proposed sale of the Assets were at all

17   times arms-length and no collusion was involved.  Additionally, the Debtor appeared to be honest

18   and cooperative with the Trustee in the negotiation process and did not, to the Trustee's

19   knowledge, seek to gain any advantage over any other interested party or chill any other party

20   from bidding for the Assets.  Accordingly, based on the foregoing, the Trustee submits that the

21   proposed sale of the Assets is proposed in good faith and based on his sound business judgment.

22   Therefore, it should be approved.

23   **B.      The Buyer Should be Entitled to Section 363(m) Protection**

24   "[W]hen a bankruptcy court authorizes a sale of assets pursuant to § 363(b)(1) of the

25   Bankruptcy Code, it is required to make a finding with respect to the 'good faith' of the

26   purchaser."  *In re Abbotts Dairies*, 788 F.2d 143, 149-150 (3rd Cir. 1986).  The purpose of such a

27   finding is to facilitate the operation of 11 U.S.C. § 363(m), which provides for certain protections

28   to be provided to good faith purchasers from the trustee pursuant to 11 U.S.C. § 363.  In this

1  respect, 11 U.S.C. § 363(m) provides:

2  
3  
4  
5  

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

6  
7  11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith", the Ninth Circuit

8  has held that:

9  
10  
11  

> [G]ood faith . . . speaks to the integrity of his conduct in the course of the sale proceedings.  Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

12  *Alpha Indus., supra*; *Southwest Products, Inc. v. Durkin (In re Southwest Products, Inc.)*, 144

13  B.R. 100, 103 (B.A.P. 9th Cir. 1992); *Wilsey v. Central Washington Bank (In re Adams Apple,*

14  *Inc.)*, 829 F.2d 1484, 1489 (9th Cir. 1987).

15      The Trustee submits that the sale of the Assets to the Debtor pursuant to the Sale and

16  Settlement Agreement or to a third party at the Auction will be conducted in an arms' length

17  transaction.  As the Declaration of the Trustee in support of this Motion demonstrates, the

18  negotiations between the Debtor and the Trustee have at all time been conducted at arms' length,

19  through counsel, and in good faith under applicable legal standards.  In connection with the

20  proposed sale to the Debtor, the Trustee has evaluated the alternatives and acted with the intent of

21  obtaining the best possible deal for the Estate in terms of maximizing value.  The terms of the

22  Sale and Settlement Agreement accomplish this appropriate objective.  For these reasons, the

23  Trustee requests that the Court make a factual determination the Debtor, or any successful

24  overbidder(s) at the sale hearing, has purchased the Assets in good faith as defined under 11

25  U.S.C. § 363(m).[3]

26  
27  
28  

---

[3] If appropriate, the Trustee will supplement the record by filing an additional declaration or declarations after the Action has concluded to provide the Court with sufficient evidence to support a finding of good faith.

# VI.

## APPROVAL OF THE PROPOSED SALE AND SETTLEMENT AGREEMENT

**A.    Standard For Approval of Compromise**

Bankruptcy Rule 9019(a) provides:

> *Compromise.* On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. Proc. 9019(a). Bankruptcy Rule 9019 empowers a bankruptcy court to approve the settlement "if [it is] in the best interests of the estate." *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986). The approval of a proposed compromise is within the sound discretion of the court and is to be determined by the particular circumstance of each case. *See United States of America v. Alaska National Bank of the North (In re Walsh Construction, Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982). The burden of establishing the fairness of the compromise rests on the proponent. Here, the Trustee is required to demonstrate that legal evaluations have been made by counsel experienced in such matters and that sufficient investigation has been conducted to enable such counsel to make an informed decision. *See Feder v. Harrington,* 58 F.R.D. 171, 174-75 (S.D.N.Y. 1972). The Trustee satisfies his burden in this case.

In determining the acceptability of a proposed compromise, the following four factors should be considered:

(a)    The probability of success in the litigation;

(b)    The difficulties, if any, to be encountered in the matters of collections;

(c)    The complexity of the litigation fault; and the expense, inconvenience and delay necessarily attending it; and

(d)    The paramount interest of the creditors and the proper deference to their reasonable views. *See A&C Properties*, 784 F.2d at 1381.

Based upon evidence presented to it, this Court is not required to decide the questions of law and fact in dispute, but instead to canvas the issues to see whether the "settlement falls below

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/14740307.1

1    the lowest point in a range of reasonableness." *Anaconda-Ericsson Inc. (In re Teletronics*

2    *Services, Inc.)*, 762 F.2d 185, 189 (2nd Cir. 1985). When applying the above standards, and "[i]n

3    passing upon the proposed settlement, the Court must consider the principle that 'law favors

4    compromise.'" *In re Carson,* 82 B.R. 847, 853 (Bankr. S.D. Ohio 1994) (citations omitted).

5          Here, as set forth below, in the event the Debtor is the ultimate purchaser of the Assets,

6    the Court should also approve the Sale and Settlement Agreement attached hereto as **Exhibit 1**

7    pursuant to Rule 90119.

8    **B.**    **Application of Criteria to Sale and Settlement Agreement**

9          Application of the *A&C Properties* test to the instant compromise demonstrates that the

10    Sale and Settlement Agreement is well above the lowest point in the range of reasonableness and

11    should therefore be approved. The compromise merely effectuates the sale of that portion of the

12    Assets that represent claims against the Debtor which sale provides for much needed cash to

13    come into the Estate immediately. Given these facts and the relevant standards, the Trustee

14    respectfully submits that the Sale and Settlement Agreement is clearly within the "range of

15    reasonableness" required by the Ninth Circuit and that all parties interested in the Assets will be

16    given an opportunity to bid for such assets, thereby ensuring that the ultimate sale price

17    accurately reflects (a) the probability of success in the litigation; (b) the difficulties, if any, to be

18    encountered in the matters of collections; (c) the complexity of the litigation and the expense,

19    inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors in

20    receiving the highest possible amount for the sale and/or compromise of the Assets.

21    **VII.**

22    **MANNER AND FORM OF NOTICE**

23          The Trustee has given notice of this Motion and the proposed sale, in accordance with

24    Bankruptcy Rules 2002(a)(2) and (3), 9007, 9019(a), 6004-1(b) and (c), and Local Bankruptcy

25    Rules 6004-1 and 9013-1(a) (the "Notice"), to all known creditors and parties-in-interest in this

26    bankruptcy case by first class mail. The Trustee believes that such notice constitutes adequate

27    notice pursuant to 11 U.S.C. § 102 and requests that such notice be approved by this Court as

28    being adequate under all of the circumstances.

**VIII.**

**THE COURT SHOULD PERMIT IMMEDIATE RELIEF**

The Trustee requests that the Court waive Bankruptcy Rule 6004(h), which provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Although Rule 6004(h) is silent as to when a court should "order otherwise", a leading treatise suggests that the 14 day stay period should be waived "in all cases where there has been no objection to the procedure." 10 Collier on Bankruptcy ¶ 6004.11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Here, a waiver of Rule 6004(h) will permit the Trustee to immediately realize the value of the Assets for the benefit of the Estate and its creditors and should, therefore, be granted.

**IX.**

**CONCLUSION**

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order (1) approving the Trustee's proposed bid procedures set forth herein; (2) authorizing the sale of the Assets to the Debtor or any successful over-bidder(s); (3) finding that the Debtor or any successful over-bidder(s) are "good faith" purchasers entitled to all of the protections and benefits of 11 U.S.C. § 363(m); (4) waiving the 14 day stay provided in Rule 6004(h); (5) approving the Sale and Settlement Agreement pursuant to Rule 9019 in the event that Debtor's bid is determined to be the highest and best bid for the Assets; and (6) granting such other and further relief the Court deems just and proper.

Dated: October 25, 2017

Respectfully submitted,
**ARENT FOX LLP**


By: _/s/ M. Douglas Flahaut_
    M. Douglas Flahaut
    General Bankruptcy Counsel for
    Chapter 7 Trustee, John J. Menchaca

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/14740307.1

1

## DECLARATION OF JOHN J. MENCHACA

2     I, John J. Menchaca, declare that:

3          1.          I am the duly appointed and acting Chapter 7 Trustee (the "Trustee") of the above-

4     captioned bankruptcy estate (the "Estate") of Herzl Ben Marome, the above-captioned debtor (the

5     "Debtor").  I have personal knowledge of the facts described herein and if called as a witness, I

6     could and would testify competently thereto.  I submit this declaration in support of the *Chapter 7*

7     *Trustee's Motion for Order:(1) Approving the Sale of Assets Under 11 U.S.C. § 363, Subject to*

8     *Higher and Better Offers; and (2) Approving Settlement Pursuant to Fed. R. Bankr. P. 9019* (the

9     "Motion").

10         2.          The factual allegations in support of the forgoing sale motion are set forth in

11    Sections II and III.  I have reviewed and discussed these factual recitals with my counsel and

12    based upon such review and discussion, believe them to be true and correct to the best of my

13    knowledge, information, and belief.

14         3.          Subject to overbid and the approval of the Court, the Debtor has agreed to

15    purchase the Assets for the sum of $45,000 pursuant to the terms and conditions of the Sale and

16    Settlement Agreement signed by the Trustee and the Debtor, a true and correct copy of which is

17    attached hereto as **Exhibit 1.**

18         4.          In the exercise of my reasonable business judgment, I have decided to accept the

19    Debtor's offer to purchase the Assets, subject to overbid, and this Court's approval.  Based upon

20    the facts of this case and the advice of my counsel as to the legal issues presented, I believe that it

21    is in the best interest of the Estate for the sale of the Assets to be approved for at least the

22    following reasons:

23         a.          The sale of the Assets, subject to overbid, will monetize the assets for the benefit

24    of creditors of the Debtor's Estate, which is currently administratively insolvent; and

25         b.          The consideration provided to the Estate by Debtor as set forth in the Sale and

26    Settlement Agreement represents adequate and fair consideration for the Assets.

27         7.          I, through my counsel, have encouraged interested potential bidders including Ms.

28    Wipranik to submit bids for the Assets.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/14740307.1

8.      The proposed bid procedures described in the foregoing motion are intended to increase the likelihood that the Estate will receive the highest and best price for the Assets. By open solicitation of higher bids, I have made every effort to maximize the value of the Assets to the Estate and its creditors.

9.      At my direction, my counsel will give notice of the Motion and the proposed auction, in accordance with Bankruptcy Rules 2002(a)(2), 6004(a) and (c), 9007, and 9014 and Rules 6004-1 and 9013-1 of the Local Bankruptcy Rules, to all known creditors and parties-in-interest in this bankruptcy case by first class mail.

10.     The negotiations between me and the Debtor regarding the proposed sale and the terms of the Sale and Settlement Agreement were at all times arms-length and I am not aware of any collusion with respect to the negotiation and ultimate execution of the Sale and Settlement Agreement. Additionally, to the best of my knowledge the Debtor was honest and cooperative with me in the negotiation process and did not improperly seek to gain any advantage over any other interested party or chill any other previous bidding for the Assets.

11.     Moreover, in connection with the proposed sale of the Assets to Debtor, I have evaluated the alternatives and acted with the intent of obtaining the best possible deal for the Estate in terms of maximizing value. Thus, I believe the terms of the Sale and Settlement Agreement as well as the sale of the Assets to the Debtor (or any overbidder that may ultimately be the high bidder for the assets) accomplishes this appropriate objective.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of October 2015, at Los Angeles, California.

John J. Menchaca

EXHIBIT 1

## SALE AND SETTLEMENT AGREEMENT

   This agreement (the "Sale and Settlement Agreement") is made and entered into by and between John J. Menchaca, Chapter 7 Trustee of the Herzl Ben Marome bankruptcy estate (the "Trustee") on the one hand, and Herzl Ben Marome ("Marome"), on the other hand.  The Trustee and Marome sometimes are collectively referred to hereinafter as the "Parties".

### RECITALS

   The Parties enter into this Sale and Settlement Agreement with reference to the following facts:

1.   On or about August 31, 2016 (the "Petition Date"), a voluntary Chapter 7 petition was filed by Marome [Bankruptcy Case No. 2:16-bk-21668-BB] (the "Bankruptcy Case").

2.   Pursuant to the Bankruptcy Code, upon entry of the order for relief under Title 11, Chapter 7 of the United States Code, Marome's Chapter 7 bankruptcy estate (the "Estate") included, without limitation, all Marome's non-exempt real and personal property; any and all non-exempt affirmative claims for relief; avoidance actions; and all rights of action, including but not limited to all actions under Chapter 5 of the Bankruptcy Code.

3.   Among other things, the Trustee identified certain pre-petition payments made by Marome to various third parties which the Trustee asserts may be avoidable and recoverable pursuant to, among other provisions, 11 U.S.C. § 544, 548, 550, 551 and/or applicable state law regarding avoidable transfers. Additionally, the Trustee has asserted there may be non-exempt value for creditors in that certain real property commonly known as 638 Pier Avenue, Unit B, Santa Monica, California ("Unit B") and the Trustee has objected to Marome's motion to compel the abandonment of Unit B.

4.   Marome generally denies that any transfers (pre-petition or otherwise) are avoidable pursuant to Chapter 5 of the Bankruptcy Code and asserts that there is no non-exempt property; he also specifically denies that there is nonexempt equity in Unit B such that Unit B should be abandoned by the Trustee.

5.   Following discussions between Marome and the Trustee, the Parties have reached a sale and settlement with respect to all assets and all rights of Marome's bankruptcy estate as set forth herein.

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION THE RECEIPT AND ADEQUACY OF WHICH IS HEREBY ACKNOWLEDGED, the Parties agree as follows:

### TERMS OF AGREEMENT

#### Incorporation of Recitals

1.   The recitals set forth above are not only recitals, but form an integral part of this Sale and Settlement Agreement, and are true and correct statements of fact and are incorporated herein by this reference.

#### Payment to the Trustee

2.   Immediately upon approval of this Sale and Settlement Agreement, Marome shall pay **$45,000.00** (the "Purchase and Settlement Amount") to the Trustee in exchange for all rights, claims, and assets whatsoever of Marome's Chapter 7 bankruptcy estate as well as the releases set forth herein.  Payment shall be made by cashier's check made payable to "John J. Menchaca, Chapter 7 Trustee of the Herzl Ben

Marome Bankruptcy Estate" and such $45,000.00 cashier's check shall be brought by Marome to the Bankruptcy Court hearing on the motion to approve this Sale Settlement Agreement.

## Effectiveness of this Sale and Settlement Agreement

3.      This Sale and Settlement Agreement is binding on the Parties when signed and shall become effective upon the Trustee's receipt of the Purchase and Settlement Amount and the Bankruptcy Court's approval of this Sale and Settlement Agreement.

## Agreement Re Auction, Minimum Overbid, and Breakup Fee To Marome

4.      The Parties agree and acknowledge that an auction will be held at which any party may seek to purchase all rights, claims, and assets whatsoever of Marome's Chapter 7 bankruptcy estate (including but not limited to those released herein) and that if a sale of such rights is approved to a party other than Marome, the sale contemplated herein and all releases contained in this Sale and Settlement Agreement shall be null and void. The Parties agree and acknowledge that, subject to Bankruptcy Court approval, the minimum overbid for a third party to qualify to participate in an auction of the rights, claims, and assets of Marome's Chapter 7 bankruptcy estate will be $50,000.00 and that if Marome is outbid and the rights, claims, and assets of Marome's Chapter 7 bankruptcy estate are ultimately sold to a third party for $50,000.00 or more, Marome shall be entitled to a breakup fee (subject to Bankruptcy Court approval) of $2,500.00, which amount shall be paid immediately to Marome upon closing of the sale.

## Releases by the Trustee

5.      Effective upon Bankruptcy Court approval of this Sale and Settlement Agreement and the Trustee's receipt of the Purchase and Settlement Amount, the Trustee, on behalf of the bankruptcy Estate shall be deemed to withdraw, release, remise, forgive, acquit, settle, compromise and forever discharge Marome from any and all claims, demands, rights to payments, actions, causes of action, avoidance actions, debts, liabilities, rights, damages, costs, attorney's fees, expenses, or losses of every kind or nature whatsoever, whether known or suspected, unknown or unsuspected, anticipated or unanticipated, liquidated or unliquidated, direct or indirect, fixed or contingent, pre-petition or post-petition in the Bankruptcy Case, secured, unsecured or priority, which may presently exist or arise in the future, in law or in equity (collectively, the "Trustee Released Claims"). The Trustee agrees that this release shall operate as a complete bar to any such Trustee Released Claims. Except for litigation to enforce the terms of this Sale and Settlement Agreement, the Trustee hereby covenants and agrees that he will not initiate, prosecute, or maintain any proceeding or give advice or assistance in relation to any proceeding which arises out of, or is or may be, in whole or in part, based upon, related to, or connected with the Trustee Released Claims. Notwithstanding anything to the contrary herein, this release does not apply to any rights, claims, obligations or privileges arising under this Sale and Settlement Agreement.

## Releases by Marome

6.      Effective upon Bankruptcy Court approval of this Sale and Settlement Agreement and the Trustee's receipt of the Purchase and Settlement Amount, Marome shall be deemed to withdraw, release, remise, forgive, acquit, settle, compromise and forever discharge the Trustee and the Estate from any and all claims, demands, rights to payments, actions, causes of action, avoidance actions, debts, liabilities, rights, damages, costs, attorney's fees, expenses, or losses of every kind or nature whatsoever, whether known or suspected, unknown or unsuspected, anticipated or unanticipated, liquidated or unliquidated, direct or indirect, fixed or contingent, pre-petition or post-petition in the Bankruptcy Case, secured, unsecured or

-2-

priority, which may presently exist or arise in the future, in law or in equity (collectively, the "Marome Released Claims"). Marome agrees that this release shall operate as a complete bar to any such Marome Released Claims. Except for litigation to enforce the terms of this Sale and Settlement Agreement, Marome hereby covenants and agrees that he will not initiate, prosecute, or maintain any proceeding or give advice or assistance in relation to any proceeding which arises out of, or is or may be, in whole or in part, based upon, related to, or connected with the Marome Released Claims. Notwithstanding anything to the contrary herein, this release does not apply to any rights, claims, obligations or privileges arising under this Sale and Settlement Agreement.

## Waiver of Statutory Rights

7.        The Parties to this Sale and Settlement Agreement hereby acknowledge that the releases provided in Paragraphs 5 and 6 of this Sale and Settlement Agreement are fully binding in accordance with their terms notwithstanding California Civil Code Section 1542 and/or any similar state or federal law, and hereby waive all rights that may exist thereunder. California Civil Code Section 1542 provides as follows:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor.**

## Representations and Warranties

8.        Each party hereto represents and warrants that:

(a)        It, he or she has had the benefit and advice of independent counsel in connection with this Sale and Settlement Agreement;

(b)        This Sale and Settlement Agreement is executed without reliance on any statement, representation, promise, inducement, understanding, or agreement by or on behalf of any other party hereto or by or on behalf of any representative or agent employed by any of them, other than the matters expressly set forth herein;

(c)        No promise, inducement, understanding or agreement not expressed herein has been made to or with any party, and this Sale and Settlement Agreement contains the entire written agreement between the Parties;

(d)        This Sale and Settlement Agreement is the product of the efforts of the Parties and, as a result, it will not be construed, and no presumption will arise, based upon who drafted this Sale and Settlement Agreement;

(e)        To the extent applicable, each of the Parties has all corporate power and authority to perform its obligations hereunder and to consummate the terms of this Sale and Settlement Agreement;

(f)        The terms of this Sale and Settlement Agreement are contractual and not mere recitals; and

(g)        The various headings in this Sale and Settlement Agreement are inserted for convenience only and shall not affect this Sale and Settlement Agreement or any provisions hereof.

## No Admission of Liability

AFDOCS/15461115.1

9.      This Sale and Settlement Agreement effects the settlement of claims that are contested, and nothing contained herein shall be construed as an admission by any party hereto of any liability of any kind to any other party or to any other person or entity.

### Jurisdiction

10.     The United States Bankruptcy Court overseeing the Bankruptcy Case retains exclusive jurisdiction (subject only to the right of appeal) to resolve any and all disputes pertaining to this Sale and Settlement Agreement, including the enforcement of any of its terms.

### Governing Law

11.     Each party agrees that this Sale and Settlement Agreement shall be governed by and interpreted under the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and, where appropriate, the laws of the State of California.

### Further Assurances

12.     Each party to this Sale and Settlement Agreement shall execute all instruments and documents and take all actions as may be reasonably required to effectuate this Sale and Settlement Agreement.

### Execution in Counterparts

13.     This Sale and Settlement Agreement may be signed in counterparts by the Parties hereto and shall be valid and binding on each party as if fully executed in a single document.

### Execution by Fax Signatures

14.     This Sale and Settlement Agreement may be signed by fax transmission or by scanned PDF transmitted by electronic mail by the Parties hereto and shall be valid and binding on each party as if executed in person.

### Entirety and Amendments

15.     This Sale and Settlement Agreement constitutes the full and final agreement among the Parties with respect to the subject matter hereof and shall not be modified or amended in any respect except by a written instrument expressing such amendment or modification signed by each of the Parties.

### Final Accord and Satisfaction

16.     This Sale and Settlement Agreement and any releases that may be contained herein are intended to be final and binding between the Parties hereto and are further to be effective as a full and final accord and satisfaction between the Parties to this Sale and Settlement Agreement, and each party expressly relies on the finality of this Sale and Settlement Agreement as a substantial, material factor inducing that party's execution of this Sale and Settlement Agreement.

### Attorneys' Fees

17.     Each party shall bear their own attorneys' fees, court costs, and related expenses incurred by or on behalf of said party in connection with their underlying dispute and this Sale and Settlement Agreement.

### Successors and Assigns

18.　　　　The provisions of this Sale and Settlement Agreement shall bind and inure to the benefit of the respective successors and assigns of the Parties hereto.

### Portion of Sale and Settlement Agreement Deemed Void

19.　　　　If any paragraph, section, sentence, clause or phrase in this Sale and Settlement Agreement shall become illegal, null or void for any reason, or shall be held by a court of competent jurisdiction to be illegal, null or void or against public policy, the remaining paragraphs, sections, sentences, clauses or phrases herein shall not be affected thereby.

### Time of the Essence

20.　　　　Time is of the essence. The Parties agree that any party's failure to perform any term, condition or covenant of this Sale and Settlement Agreement within the time provided for herein shall constitute a default of this Sale and Settlement Agreement.

### Notices

21.　　　　Any notice, request, instruction, or demand to be given under this Sale and Settlement Agreement shall be in writing and shall be delivered by first class mail to the address of the party set forth below, or to such other address as the party may designate by written notice.

If to the Trustee
Arent Fox LLP
Attn: M. Douglas Flahaut
555 W. Fifth St., 48th Floor
Los Angeles, CA 90013

If to Marome
Herzl Ben Marome
c/o Shai S. Oved
7445 Topanga Cyn. Blvd., Ste 220
Canoga Park, CA 91303

DATED: September 27, 2017

By: _____

John J. Menchaca, Chapter 7 Trustee of the Herzl Ben Marome
Chapter 7 Bankruptcy Estate

DATED: September 26, 2017

By: _____

Herzl Ben Marome

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Arent Fox LLP, Gas Company Tower, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013.

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) APPROVING THE SALE OF ASSETS UNDER 11 U.S.C. § 363, SUBJECT TO HIGHER AND BETTER OFFERS; AND (2) APPROVING SETTLEMENT AGREEMENT PURSUANT TO FED. R. BANKR. P. 9019; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JOHN J. MENCHACA IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **10/25/2017** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **10/25/2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/25/2017 | AYLIN SOOKASSIANS | /s/ Aylin Sookassians |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                             **F 9013-3.1.PROOF.SERVICE**

AFDOCS/15621168.1

## 1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):

Joseph C Delmotte on behalf of Creditor HSBC Bank USA, National Association as Trustee for Wells Fargo Asset
Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-4
ecfcacb@aldridgepite.com, JCD@ecf.inforuptcy.com;jdelmotte@aldridgepite.com

Joseph C Delmotte on behalf of Interested Party Courtesy NEF
ecfcacb@aldridgepite.com, JCD@ecf.inforuptcy.com;jdelmotte@aldridgepite.com

M Douglas Flahaut on behalf of Trustee John J Menchaca (TR)
flahaut.douglas@arentfox.com

Sevan Gorginian on behalf of Trustee John J Menchaca (TR)
sevan.gorginian@arentfox.com, notices@nextchapterbk.com

John J Menchaca (TR)
jmenchaca@menchacacpa.com, ca87@ecfcbis.com;igaeta@menchacacpa.com

Aram Ordubegian on behalf of Trustee John J Menchaca (TR)
ordubegian.aram@arentfox.com

Shai S Oved on behalf of Debtor Herzl Ben Marome
ssoesq@aol.com

Shai S Oved on behalf of Defendant Herzl Ben Marome
ssoesq@aol.com

Edward G Schloss on behalf of Creditor BAYVIEW LOAN SERVICING, LLC
egs2@ix.netcom.com

Edward G Schloss on behalf of Creditor BAYVIEW LOAN SERVICING, LLC, servicing agent for The Bank of New York
Mellon
egs2@ix.netcom.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Gilbert R Yabes on behalf of Interested Party Courtesy NEF
ecfcacb@aldridgepite.com, GRY@ecf.inforuptcy.com;gyabes@aldridgepite.com


## 2. SERVED BY UNITED STATES MAIL:

## JUDGE

Honorable Sheri Bluebond
United States Bankruptcy Court
255 E. Temple Street, Suite 1534
Los Angeles, CA 90012

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                          F 9013-3.1.PROOF.SERVICE

AFDOCS/15621168.1